Eric J. Klein [(*pro hac vice* application to be filed)]
  eklein@velaw.com
**VINSON & ELKINS L.L.P.**
2001 Ross Avenue, Suite 3900
Dallas, TX  75201-2975
Telephone: 214.220.7700 / Fax: 214.220.7716

Abigail Lubow (CA SBN: 314396)
  alubow@velaw.com
**VINSON & ELKINS L.L.P.**
555 Mission Street, Suite 2000
San Francisco, CA  94105
Telephone: 415.979.6900 / Fax: 415.651.8786

Bruce L. Ishimatsu (CA SBN 86145)
  bruce@ishimatsulaw.com
**ISHIMATSU LAW GROUP, P.C.**
4712 Admiralty Way, No. 1012
Marina del Rey, CA 90292
Telephone: 310.200.4060 / Fax: 310.496.1540

***Attorneys for Petitioner Japan Display Inc.***

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| *In re*: Application Pursuant to 28 U.S.C. § 1782 of Japan Display Inc., | Case No. _____ |
| Petitioner, | **EX PARTE APPLICATION FOR AN ORDER AUTHORIZING DISCOVERY FOR USE IN FOREIGN PROCEEDINGS UNDER 28 U.S.C. § 1782** |
| - To take the discovery of - | |
| Tianma America, Inc., | |
| Respondent. | **SUPPORTING MEMORANDUM** |

# TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................1

II.     LEGAL STANDARD .................................................................3

III.    ARGUMENT...............................................................................5

    A.    JDI's Application Satisfies the Statutory Prerequisites of 28
        U.S.C. § 1782. ....................................................................5

    B.    The Supreme Court's *Intel* Factors Support Granting JDI's
        Application. .......................................................................6

        1.    Factor 1:  TMA Is Not a Party to the Chinese Proceedings. ..........6

        2.    Factor 2:   The Beijing Intellectual Property Court Is
            Receptive to U.S. Judicial Assistance..............................7

        3.    Factor 3:   JDI Does Not Seek to Circumvent Foreign
            Proof-Gathering Restrictions. ........................................9

        4.    Factor 4:  JDI's Requests Are Not Unduly Burdensome. ............12

    C.    TMA's Confidential Information Can Be Guarded by a
        Protective Order. .............................................................14

IV.     CONCLUSION ..........................................................................15

# TABLE OF AUTHORITIES

## Cases

*Advanced Micro Devices, Inc. v. Intel Corp.*,
  292 F.3d 664 (9th Cir. 2002)....................................................................4
*Akebia Therapeutics, Inc. v. Fibrogen, Inc.*,
  793 F.3d 1108 (9th Cir. 2015).............................................................4, 14
*Euromepa S.A. v. R. Esmerian, Inc.*,
  51 F.3d 1095 (2d Cir. 1995)......................................................................8
*Four Pillars Enters. Co. v. Avery Dennison Corp.*,
  308 F.3d 1075 (9th Cir. 2002)...................................................................4
*Gov't of Ghana v. ProEnergy Servs., LLC*,
  677 F.3d 340 (8th Cir. 2012)...................................................................11
*Illumina Cambridge Ltd v. Complete Genomics, Inc.*,
  No. 19-MC-80215-WHO, 2020 WL 1694353 (N.D. Cal. Apr. 7, 2020)..................6
*Illumina Cambridge Ltd. v. Complete Genomics, Inc.*,
  No. 19-MC-80215-WHO(TSH), 2020 WL 820327
  (N.D. Cal. Feb. 19, 2020) ................................................................10, 11
*In re Application of Rainsy*,
  No. 16-mc-80258-DMR, 2017 WL 528476 (N.D. Cal. Feb. 9, 2017)..................5
*In re Borrelli*,
  No. 20-MC-80154-JSC, 2020 WL 5642484 (N.D. Cal. Sept. 22, 2020).................7
*In re Google Inc.*,
  No. 14-MC-80333-DMR, 2014 WL 7146994 (N.D. Cal. Dec. 15, 2014)..............13
*In re Macquarie Bank Ltd.*,
  No. 2:14-cv-0797-GMN-NJK, 2014 U.S. Dist. LEXIS 181626 (D. Nev. June 4,
  2014)................................................................................................7, 10
*In re O'Keeffe*,
  646 F. App'x 263 (3d Cir. 2016).................................................................8
*In re Pioneer Corp.*,
  No. 2:18-MC-0037-UA-SS, 2018 WL 2146412 (C.D. Cal. May 9, 2018) ..............5
*In re Premises Located at 840 140th Ave. NE, Bellevue, Wash.*,
  634 F.3d 557 (9th Cir. 2011)............................................................4, 9, 12
*In re Procter & Gamble*,
  334 F. Supp. 2d 1112 (E.D. Wis. 2004) ......................................................11
*In re Servicio Pan Americano de Proteccion, C.A.*,
  354 F. Supp. 2d 269 (S.D.N.Y. 2004)..................................................7, 8, 10
*In re TPK Touch Sols. (Xiamen) Inc.*,
  No. 4:16-MC-80193-DMR, 2016 WL 6804600 (N.D. Cal.
   Nov. 17, 2016).....................................................................................5, 9

*In re Varian Medical Sys. Int'l AG*,
   No. 16-mc-80048-MEJ, 2016 WL 1161568 (N.D. Cal. Mar. 24, 2016) ............9, 12
*Intel Corp. v. Advanced Micro Devices, Inc.*,
   542 U.S. 241 (2004) ...................................................................................passim
*Japan Display Inc. v. Tianma Microelectronics Co., Ltd.*,
   No. 2:20-cv-00283-JRG, Dkt. 21 (E.D. Tex. Dec. 21, 2020) (Ex. L)....................6, 7
*Mees v. Buiter*,
   793 F.3d 291 (2d Cir. 2015)........................................................................9, 11, 12
*Palantir Techs., Inc. v. Abramowitz*,
   415 F. Supp. 3d 907 (N.D. Cal. 2019) ...................................................................13
*Siemens AG v. W. Digital Corp.*,
   No. 8:13-CV-01407-CAS, 2013 WL 5947973 (C.D. Cal. Nov. 4, 2013) .5, 8, 10, 14

**Statutes**

28 U.S.C. § 1782.......................................................................................passim

**Rules**

Fed. R. Civ. P. 26........................................................................................12
Fed. R. Civ. P. 26(b)(1) ..............................................................................12

**Other Authorities**

2017 Corporate Social Responsibility Report, TIANMA MICROELECTRONICS, 68 (Mar.
   2018) *available at* http://en.tianma.com/UpLoadFile/20180504/b4618db4-5b0f-
   43f6-9a7a-c6273b07a90a.pdf ...................................................................................1
*China Judicial Assistance Information*, U.S. DEP'T OF STATE, *available at*
   https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-
   Information/China.html ...............................................................................8
Jason Ma, *Patent Litigation in China from a Comparative Perspective*,
   10 U. PA. E. ASIA L. REV. 66 (2014) ............................................................7

Japan Display Inc. ("JDI") respectfully applies to the Court for an order authorizing discovery pursuant to 28 U.S.C. § 1782 from Tianma America, Inc. ("TMA") for use in patent litigation proceedings in China that JDI filed against Tianma Microelectronics Co. Ltd. ("Tianma"). TMA is a "leading provider of small to medium size display solutions to the Americas, utilizing cutting edge technologies from Tianma Microelectronics" and is believed to have information related to the accused products at issue in the foreign proceeding. *See* Ex. C, About Us, TMA WEBSITE, *also available at* https://usa.tianma.com/company-services/company-history-roadmap (lasted visited on Dec. 16, 2020). The proposed order and the subpoena to be served on TMA are attached to this application as Exhibits A and B, respectively.

## I.    INTRODUCTION

JDI is a Japanese corporation and leader in the field of thin film transistor ("TFT") liquid crystal display ("LCD") panels. Among other contributions, JDI pioneered an innovative TFT LCD fabrication process utilizing low temperature polycrystalline silicon ("LTPS"), which allows TFT LCD panels to achieve a higher resolution while minimizing power consumption. These advantages make LTPS TFT LCD panels ideal displays to be incorporated into consumer and industrial electronic devices, including smartphones, tablets, cameras, game consoles, automotive electronics, and medical equipment. JDI's significant investment in research and development in LTPS technology and other display technologies is protected by its broad and extensive patent portfolio.

Tianma competes with JDI in the marketplace for TFT LCD panels, including TFT LCD panels that utilize LTPS technology. *See* Ex. D, 2017 Corporate Social Responsibility Report, TIANMA MICROELECTRONICS, 68 (Mar. 2018) *available at* http://en.tianma.com/UpLoadFile/20180504/b4618db4-5b0f-43f6-9a7a-c6273b07a90a.pdf (Tianma "focus[es] on medium-/small-sized displays [and is]

dedicated to offering [its] clients the world over cutting-edge technologies and products and quality services. At present, the company chiefly serves customers in Mainland China, Taiwan, Europe, America, Japan and South Korea."); Ex. C, About Us, TMA WEBSITE ("The possession of new technologies including LTPS-TFT . . . lays the foundation for innovation and the development of new and exciting products."). JDI has recently discovered that Tianma's products use JDI's patented technology without permission and JDI has expended substantial resources to expose the extent of Tianma's infringement. JDI's investigation, however, is limited by the fact that most displays are ultimately integrated into end-user devices for which the display manufacturer is not publicly known. To date JDI has identified several cellular phone devices that include Tianma's infringing TFT LCD panels. JDI has filed four lawsuits against Tianma in the Beijing Intellectual Property Court, each asserting one of JDI's Chinese patents and identifying as infringing products the "liquid crystal display devices manufactured, used, offered to sell, and sold by" Tianma (the "Accused Products"). *See* Ex. E, Compl. at 4 (Beijing IP Ct. Sept. 30, 2020) (asserting Chinese Patent No. ZL200710301194.9[1]); Ex. F., Compl. at 5 (Beijing IP Ct. Sept. 30, 2020) (asserting Chinese Patent No. ZL200610095788.4[2]) (Panasonic Liquid Crystal Display Co., Ltd. is a co-plaintiff with JDI in this lawsuit); Ex. G, Compl. at 4 (Beijing IP Ct. Dec. 2, 2020) (asserting Chinese Patent No. ZL200810082224.6[3]); Ex. H, Compl. at 4 (Beijing IP Ct. Dec. 2, 2020) (asserting Chinese Patent No. ZL200710146566.5[4]) (certified English translations are attached to all complaints).

This application seeks discovery from TMA for use in these patent infringement lawsuits in China. According to its website, TMA is a "leading provider of small to medium size display solutions to the Americas, utilizing cutting

---

[1] A copy of ZL200710301194.9 and a certified English translation of the claims are attached as Ex. M.
[2] A copy of ZL200610095788.4 and a certified English translation of the claims are attached as Ex. N.
[3] A copy of ZL200810082224.6 and a certified English translation of the claims are attached as Ex. O.
[4] A copy of ZL200710146566.5 and a certified English translation of the claims are attached as Ex. P.

edge technologies from Tianma Microelectronics." and "offers a comprehensive range of Liquid Crystal Display (LCD) products and associated technologies[, including] . . . a-Si and LTPS-TFT LCD . . . products." Ex. C, About Us, TMA WEBSITE. Further TMA claims that it "has responsibility for all sales, marketing and engineering support of the Tianma Group display solutions in the Americas." *Id.* TMA's website also demonstrates TMA's knowledge of Tianma's manufacturing processes by describing the types of products made in Tianma factories, including in factories located in China. *See* Ex. I, State of the Art Factories, TMA WEBSITE. For example, TMA states that the Xiamen Tianma factory "has a Gen 5.5 LTPS TFT-LCD production line and a CF production line, and produces small-to-medium display products used mainly in high-end Mobile Devices displays and modules." *Id.* TMA also notes that two "new Gen 6 LTPS TFT-LCD production line[s]" are being built. *Id.* TMA's website further includes high-level technical details for 173 display products. Based on the forgoing, TMA is likely to have relevant and necessary sales, technical, and marketing information regarding the Accused Products. Through this application, JDI seeks to avail itself of the provisions of Section 1782, which is intended to provide support for foreign proceedings like JDI's proceedings in China.

## II.   LEGAL STANDARD

Section 1782 allows parties that are involved in foreign litigation to ask a district court to order another party located in that court's district to produce evidence that is relevant to the foreign litigation. 28 U.S.C. § 1782; *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247-49 (2004). The Ninth Circuit routinely affirms grants of discovery under Section 1782 and has stated: "allowance of liberal discovery . . . seems entirely consistent with the twin aims of Section 1782: providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar assistance to our courts." *Advanced Micro*

*Devices, Inc. v. Intel Corp.*, 292 F.3d 664, 669 (9th Cir. 2002) (citation omitted), *aff'd, Intel*, 542 U.S. 241 (2004).

Section 1782 includes three statutory prerequisites that must be met before a court can order discovery: (1) the person from whom discovery is sought must reside or be found in the district of the district court where the application is made; (2) the discovery must be for use in a proceeding before a foreign tribunal; and (3) the application must be made by the foreign tribunal or "any interested person." 28 U.S.C. § 1782.

Once a court is satisfied an application under Section 1782 meets these three statutory prerequisites, it is within a court's broad discretion to grant or deny that application. *See Akebia Therapeutics, Inc. v. Fibrogen, Inc.*, 793 F.3d 1108, 1112 (9th Cir. 2015); *Four Pillars Enters. Co. v. Avery Dennison Corp.*, 308 F.3d 1075, 1078 (9th Cir. 2002). In *Intel*, the Supreme Court identified four factors to guide a court's exercise of this discretion: "[1] whether 'the person from whom discovery is sought is a participant in the foreign proceeding'; [2] 'the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance'; [3] whether the request 'conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States'; and [4] whether the request is 'unduly intrusive or burdensome.'" *In re Premises Located at 840 140th Ave. NE, Bellevue, Wash.*, 634 F.3d 557, 571 (9th Cir. 2011) (quoting *Intel*, 542 U.S. at 264-65). These factors are "nonexclusive," and a district court is not "required to address explicitly every factor." *Akebia*, 793 F.3d at 1112.

## III.   ARGUMENT

### A.   JDI's Application Satisfies the Statutory Prerequisites of 28 U.S.C. § 1782.

Before granting a request for discovery under Section 1782, a court must review the statutory prerequisites:   "(1) the application is made by a foreign or international tribunal or any interested person; (2) the discovery is for use in a proceeding in a foreign or international tribunal; and (3) the person or entity from whom the discovery is sought is a resident of or found in the district in which the application is filed."   *In re Pioneer Corp.*, No. 2:18-MC-0037-UA-SS, 2018 WL 2146412, at *2 (C.D. Cal. May 9, 2018).   First, JDI qualifies as an "interested person" because it is the plaintiff in the Chinese proceeding against Tianma.   *See* Dong Decl. at ¶ 3; *Siemens AG v. W. Digital Corp.*, No. 8:13-CV-01407-CAS, 2013 WL 5947973, at *2 (C.D. Cal. Nov. 4, 2013) (citing *Intel*, 542 U.S. at 256 ("No doubt litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782."))   Second, the discovery that JDI seeks is for use in proceedings before a foreign tribunal, specifically the Beijing Intellectual Property Court in China, which is a court of special jurisdiction in Beijing.   *See* Dong Decl. at ¶ 4; *In re TPK Touch Sols. (Xiamen) Inc.*, No. 4:16-MC-80193-DMR, 2016 WL 6804600, at *2 (N.D. Cal. Nov. 17, 2016) (finding "actions before the People's Courts in China constitute foreign tribunals for purposes of Section 1782").   Third, a company is found, for Section 1782 purposes, in the district where that company is headquartered.   *See In re Rainsy*, No. 16-mc-80258-DMR, 2017 WL 528476, at *2 (N.D. Cal. Feb. 9, 2017) (finding that Chevron could be "found in" the district based solely on the location of its headquarters); *see also In re Pioneer*, No. MC 18-0037 UA (SS), 2018 WL 2146412, at *6 (concluding that entity resides in the district when its headquarters are located in the district).   TMA's headquarters are located in Chino, California, thus, TMA is "found" in this district.

1  *See* Ex. J, Contact Us, TMA WEBSITE; Ex. K, *Corp. – Statement of Information*, Cal.

2  Secretary of State (Apr. 17, 2020).

3  **B.   The Supreme Court's *Intel* Factors Support Granting JDI's**

4  **Application.**

5     1.   Factor 1:  TMA Is Not a Party to the Chinese Proceedings.

6     The first *Intel* factor asks whether "the person from whom discovery is sought

7  is a participant in the foreign proceeding."  *Intel*, 542 U.S. at 265.  If the party is *not* a

8  participant in the foreign proceeding, then this factor weighs in favor of granting an

9  application for discovery under Section 1782 because the non-participant may be

10  outside the foreign tribunals jurisdictional reach and "their evidence, available in the

11  United States, may be unobtainable absent Section 1782(a) aid."  *Id.* at 264.  TMA is

12  not a party to the lawsuits JDI filed against Tianma in China.  Dong Decl. at ¶ 11.

13  TMA is also beyond the jurisdictional reach of the Beijing Intellectual Property Court

14  and cannot be compelled to produce documents in the China proceedings.  Dong

15  Decl., ¶ 11.  Thus, absent Section 1782 discovery, JDI will be unable to request or

16  obtain any evidence from TMA for use in the proceedings in China.  *See id.*

17  Accordingly, the first *Intel* factor weighs in favor of granting JDI's application.

18     Even though TMA purports to be a subsidiary of Tianma, courts have

19  acknowledged distinctions among corporate families when analyzing this *Intel* factor.

20  *See, e.g.*, *Illumina Cambridge Ltd v. Complete Genomics, Inc.*, No. 19-MC-80215-

21  WHO, 2020 WL 1694353, at *2 (N.D. Cal. Apr. 7, 2020) (finding "[subsidiary's

22  parent] is not a respondent in this matter; [the subsidiary] is").  In other unrelated

23  litigation that JDI brought in the United States District Court for the Eastern District

24  of Texas, Tianma has argued that it "does not exert control over" TMA and that their

25  "[c]orporate form must not be disregarded."  *Japan Display Inc. v. Tianma*

26  *Microelectronics Co., Ltd.*, No. 2:20-cv-00283-JRG, Dkt. 21 at 2, 11 (E.D. Tex. Dec.

27  21, 2020) (Ex. L).  In support of that argument, Tianma stated that "the two entities

28

have separate articles of incorporation, and maintain separate corporate records, financial accounts, and accounting systems." *Id.* at 2, 6, 10-11. Accordingly, TMA's relationship with Tianma as a subsidiary does not weigh against granting the requesting discovery.

In fact, even if TMA was found to be a participant in the foreign litigation, which it is not, "[t]he key issue under this factor . . . is whether the material is obtainable through the foreign proceeding." *In re Borrelli*, No. 20-MC-80154-JSC, 2020 WL 5642484, at *2 (N.D. Cal. Sept. 22, 2020) (internal quotes omitted). JDI will be unable to obtain the materials through the Beijing Intellectual Property Court because TMA is not with its jurisdictional reach and because discovery in China is significantly more restrictive than the discovery procedure utilized in the U.S. *See* Dong Decl., ¶ 10; *see also* Jason Ma, *Patent Litigation in China from a Comparative Perspective*, 10 U. PA. E. ASIA L. REV. 66, 70 (2014) ("Patent right holders [in China] have tremendous difficulties in collecting necessary evidence to prove infringement, actual losses suffered by the patentee, or profits earned by the infringer."). Courts have found that—even where the respondent is a participant in the foreign litigation—if "the foreign tribunal's procedural rules may not allow for the discovery sought, this factor militates in favor of granting relief." *In re Macquarie Bank Ltd.*, No. 2:14-cv-0797-GMN-NJK, 2014 U.S. Dist. LEXIS 181626, at *6-7 (D. Nev. June 4, 2014) (citing *In re Servicio Pan Americano de Proteccion, C.A.*, 354 F. Supp. 2d 269, 274-75 (S.D.N.Y. 2004)).

        2.    Factor 2:  The Beijing Intellectual Property Court Is Receptive to U.S. Judicial Assistance.

Under the second *Intel* factor, courts evaluate "nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." *Intel*, 542 U.S. at 264. In 2014, the Standing Committee of the National People's

Congress created three intellectual property courts in the cities of Beijing, Shanghai, and Guangzhou, respectively.  Dong Decl., ¶ 4.  These intellectual property courts are equivalent to an Intermediate People's Court in that they act as appellate courts for civil or administrative decisions made by lower courts, but they also have original jurisdiction over patent litigation cases.  *Id.*  Patent rights can be enforced through civil proceedings commenced by the patent holder, like those commenced by JDI in the Beijing Intellectual Property Court.  *Id.*, ¶ 5.

Further, the Beijing Intellectual Property Court, like other Chinese courts, is receptive to evidence obtained pursuant to Section 1782.  *See* Dong Decl., ¶ 9.  First, China is a signatory to the Hague Evidence Convention and thus necessarily receptive to U.S. judicial assistance.  *See China Judicial Assistance Information*, U.S. DEP'T OF STATE, *available at* https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/China.html; *see also In re O'Keeffe*, 646 F. App'x 263, 267–68 (3d Cir. 2016) (affirming that "the Hong Kong court is likely receptive to American judicial assistance" because "Hong Kong is a signatory to the Hague Evidence Convention" (internal quotations omitted)); *In re Servicio Pan Americano de Proteccion*, 354 F.Supp. 2d at 274 ("Venezuela has indicated its receptivity to federal judicial assistance by its signature of treaties facilitating such cooperation.").  Second, the Law of Civil Procedure of the People's Republic of China allows for discovery in litigation, which demonstrates that it would not be unreceptive to the type of discovery requested from TMA.  *See* Dong Decl., ¶ 10.  JDI's lawsuit is in its early stages, and JDI will have the opportunity to present evidence at least through March 2021 or later.  *Id.*, ¶ 13.  Third, JDI is not aware of any "authoritative proof that [the Beijing Intellectual Property Court] would *reject* evidence obtained with the aid of Section 1782."  *Siemens*, No. 8:13-CV-01407-CAS, 2013 WL 5947973, at *7 (emphasis in original) (quoting *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100 (2d Cir. 1995)); *see* Dong Decl., ¶ 12; *see also, e.g.*, *In re TPK Touch Sols.*, No.

16-MC-80193-DMR, 2016 WL 6804600, at *3 (finding second *Intel* factor weighed in applicant's favor where there was "no evidence suggesting that either the People's Court or the Chinese Patent Office would 'be unreceptive' to the discovery [applicant] seeks"); *In re Varian Medical Sys. Int'l AG*, No. 16-MC-80048-MEJ, 2016 WL 1161568, at *4 (N.D. Cal. Mar. 24, 2016) (finding second *Intel* factor met where there was no evidence or case law suggesting the German district court would "be unreceptive" to the discovery sought).  For these reasons, the second *Intel* factor weighs in favor of granting discovery to JDI.

> 3.   Factor 3:  JDI Does Not Seek to Circumvent Foreign Proof-Gathering Restrictions.

The third *Intel* factor considers "whether the request 'conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States.'"  *840 140th Ave.*, 634 F.3d at 571 (quoting *Intel*, 542 U.S. at 265).

> a)   *JDI's requests do not attempt to bypass any Chinese discovery restriction.*

"Circumvention" under the third *Intel* factor exists only if a request would undermine a specific *restriction* of a foreign country or the United States that is akin to a privilege, such as the attorney-client privilege.  *See Mees v. Buiter*, 793 F.3d 291, 303 n.20 (2d Cir. 2015).  JDI is not aware of any such Chinese restrictions or policies that would prohibit seeking discovery of documents requested by the subpoena, and the discovery sought is consistent with the type of evidence used in the Chinese proceedings.  *See* Dong Decl., ¶ 12.  Accordingly, the third factor weighs in favor of granting discovery.  *See In re TPK Touch Sols.*, No. 16-MC-80193-DMR, 2016 WL 6804600, at *3 (finding the third factor weighs in petitioner's favor where "there is nothing to suggest that [petitioner] is attempting to circumvent [Chinese] proof-gathering restrictions").

b)   *Chinese technical discovery procedures weigh in favor of granting JDI's requests.*

Courts have found that "[w]here foreign countries have adopted limited discovery rules but allow parties to use broader discovery obtained pursuant to § 1782, [the third] factor militates in favor of granting § 1782 relief."   *In re Macquarie Bank Ltd.*, No. 2:14-cv-0797-GMN-NJK, 2014 U.S. Dist. LEXIS 181626, at *7-8 (D. Nev. June 4, 2014) (involving Dutch courts) (citing *In re Servicio Pan Americano de Proteccion, C.A.*, 354 F. Supp. 2d 269, 274 (S.D.N.Y. 2004) (involving Venezuelan courts).   As discussed under the first *Intel* factor, JDI will be unable to obtain the materials through the Beijing Intellectual Property Court because discovery in China is significantly more limited than the discovery procedure utilized in the U.S.   *See supra* Part III.B.1; *see also* Dong Decl., ¶ 10.   This is not due to any restriction, privilege, or overarching public policy, but rather a result of China's different technical requirements for discovery.   *See Siemens AG v. W. Digital Corp.*, No. 8:13-CV-01407-CAS, 2013 WL 5947973, at *3 (C.D. Cal. Nov. 4, 2013) (explaining that "discovery under § 1782 need not mimic the discovery procedures of the foreign jurisdiction" and distinguishing between the "technical requirements of German discovery" and Germany's "foreign proof-gathering restrictions").   The Supreme Court has held that a party may use a § 1782 application to seek more discovery than would otherwise be available through foreign discovery mechanisms without running afoul of the third factor.   *See Intel*, 542 U.S. at 260 (holding that, absent a claim of privilege, Section 1782 does not "limit[] a district court's production-order authority to materials that could be discovered in the foreign jurisdiction if the materials were located there"); *see also, e.g.*, *Illumina Cambridge Ltd. v. Complete Genomics, Inc.*, No. 19-MC-80215-WHO(TSH), 2020 WL 820327, at *5 (N.D. Cal. Feb. 19, 2020) (finding "[t]he fact that more evidence may be obtained via a § 1782 application than via the foreign discovery procedures does not

1   amount to circumvention and does not militate against approval of the application");
2   *In re Procter & Gamble*, 334 F. Supp. 2d 1112, 1113 (E.D. Wis. 2004) (finding
3   requested discovery was not an attempt to circumvent foreign proof-gathering
4   restrictions even though its scope was greater than would otherwise be available in
5   Japanese discovery).   Thus, because Chinese courts are not unreceptive to discovery
6   obtained under Section 1782 (*see supra* Part III.B.2), these more limited technical
7   requirements for discovery in China militate in favor of granting JDI's Section 1782
8   application.

9             c)      *The third* Intel *factor does not impose an exhaustion*
10                    *requirement.*

11         JDI has no duty to first seek the requested discovery from Tianma in the
12   Chinese courts.   Such a requirement "finds no support in the plain language of the
13   statute [(i.e., § 1782)] and runs counter to its express purposes."   *Mees*, 793 F.3d at
14   303 (internal quotes omitted); *see also Gov't of Ghana v. ProEnergy Servs., LLC*, 677
15   F.3d 340, 345 (8th Cir. 2012) ("[T]here is no exhaustion requirement under § 1782
16   that would require [applicant] to seek discovery of the documents in the foreign
17   forum before asking for the assistance of a district court."); *Illumina Cambridge Ltd.*
18   *v. Complete Genomics, Inc.*, No. 19-MC-80215-WHO(TSH), 2020 WL 820327, at *6
19   (N.D. Cal. Feb. 19, 2020) ("[C]ourts need not determine that an applicant has
20   exhausted its discovery attempts abroad." (internal quotes omitted)).
21         In short, because JDI seeks evidence from TMA that would be difficult or even
22   impossible to obtain under Chinese discovery procedure, Chinese courts are not
23   unreceptive to such evidence, and there is nothing to suggest that JDI is attempting to
24   circumvent Chinese proof-gathering restrictions, the third factor weighs in favor of
25   granting JDI's application for discovery.
26
27
28

4.     Factor 4:  JDI's Requests Are Not Unduly Burdensome.

Finally, the fourth *Intel* factor asks "whether the request is 'unduly intrusive or burdensome.'" *840 140th Ave.*, 634 F.3d at 571 (quoting *Intel*, 542 U.S. at 265).  This factor is evaluated under "the familiar standards of Rule 26 of the Federal Rules of Civil Procedure."  *Mees*, 793 F.3d at 302; *see also In re Varian*, No. 16-MC-80048-MEJ, 2016 WL 1161568, at \*5 ("The proper scope of discovery arising out of a § 1782 application is generally determined by the Federal Rules of Civil Procedure.").  The Federal Rules require discovery to be "'proportional' 'considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.'"  *Id.* (quoting Fed. R. Civ. P. 26(b)(1)).

JDI seeks discovery essential to its infringement theories and scope of damages that is neither unduly intrusive nor burdensome.  Rather JDI's requested information is commonly accessible to a party, such as TMA, who "has responsibility for all sales, marketing and engineering support of the Tianma Group display solutions in the Americas."  Ex. C.  JDI's requests are also narrowly tailored by seeking documents and testimony relating only to Tianma's TFT LCD lines of products.  *See id.* (describing TMA's product lines as including "passive character and monochrome, a-Si and LTPS-TFT LCD, as well as AMOLED products").  JDI's requests are also limited to Tianma's TFT LCD line of products made or sold from April 1, 2012, the business start date for JDI.  *See* https://www.j-display.com/english/company/outline.html.  Unlike domestic patent litigation where damages are statutorily limited to six years, a patent holder in China may recover the profits gained by the infringer from the first act of infringement.  *See* 35 U.S.C. § 286; Dong Decl. ¶ 5.  Thus, JDI will be able to present evidence of infringement from

at least the date of its formation.  Requests such as these that target limited categories of relevant documents are generally not unduly intrusive or burdensome.  *See Palantir Techs., Inc. v. Abramowitz*, 415 F. Supp. 3d 907, 916-17 (N.D. Cal. 2019) (finding § 1782 applicant "entitled to discovery" of documents for a timeframe exceeding eight years based on an end date relevant to the foreign proceeding).

Regarding "the parties' relative access to relevant information," there can be no dispute that TMA has greater access to the critical information about Tianma's TFT LCD products.  JDI's investigation into Tianma's infringement is a painstaking process of scouring scant references of Tianma's possible involvement in particular end user products.  *See* Dong Decl., ¶ 14.  Then JDI must purchase and tear down those products in hopes that it contains a Tianma display, and if it does, JDI must then analyze the display using sophisticated microscopy to determine whether the nano-scale features of that display exhibit use of JDI's protected LCD technology. *Id.*  In contrast, documents in TMA's possession, custody, or control could provide a complete list of Tianma's TFT LCD products and accompanying technical documentation.  *See In re Google Inc.*, No. 14-MC-80333-DMR, 2014 WL 7146994, at *3 (N.D. Cal. Dec. 15, 2014) (finding request to not be unduly burdensome or overbroad when the information sought would be "critically important" to foreign patent proceeding and there was a "slight" burden on the producing party, even while acknowledging uncertainty as to how certain categories of the requested documents were to be used in the foreign proceeding).  Moreover, only TMA knows the sales volumes, revenues, and profits of Tianma's products manufactured and exported from China.  Accordingly, the fourth *Intel* factor weighs in favor of granting JDI's application.

**C.** **TMA's Confidential Information Can Be Guarded by a Protective Order.**

JDI anticipates that the discovery requested by this application is likely to involve production of confidential, proprietary, or private information for which special protection from public disclosure and from use for any purpose other than in the Chinese proceedings may be warranted.   JDI is willing to be bound by a protective order to ensure the confidentiality of TMA's information.   In *Intel*, the Supreme Court acknowledged that district courts may use protective orders under Federal Rule of Civil Procedure 26(c) as "controls on discovery" produced in accordance with Section 1782 in order "to prevent discovery of [] business secrets and other confidential information."   *Intel*, 542 U.S. at 266.   Indeed, courts allowing Section 1782 discovery have ordered, if necessary, the parties to jointly submit a proposed protective order.   *See, e.g.*, *Siemens*, No. 8:13-CV-01407-CAS, 2013 WL 5947973, at *6; *see also Akebia*, 793 F.3d at 1110 (acknowledging that the district court "entered a restrictive protective order to guard against disclosure" of confidential information).

In order to expedite production, JDI respectfully requests that the Court order (1) TMA to mark its confidential documents as "confidential" or with some other confidential designation (such as "Confidential - Outside Attorneys Eyes Only") by the disclosing party and (2) that disclosure of the confidential document or information shall be limited to each party's outside attorney(s) of record and the employees of such outside attorney(s), until a protective order is issued by the Court.

1

**IV.   CONCLUSION**

2

      For the reasons set forth herein, Petitioner JDI respectfully requests that this

3

Court grant its application for discovery under §1782 against TMA.

4

5

Dated:  March 17, 2021                     VINSON & ELKINS L.L.P.

6

7

                              By: *_/s/ Abigail Lubow_*

8

                                    Abigail Lubow

9

                    VINSON & ELKINS L.L.P.
                    Abigail Lubow (CA SBN: 314396)

10

                      alubow@velaw.com
                    555 Mission Street, Suite 2000

11

                    San Francisco, CA  94105
                    Telephone: 415.979.6900

12

                    Fax: 415.651.8786

13

                    Eric J. Klein (*pro hac vice* application
                    to be filed)

14

                      eklein@velaw.com
                    2001 Ross Avenue, Suite 3900

15

                    Dallas, TX  75201-2975
                    Telephone: 214.220.7700

16

                    Fax: 214.220.7716

17

                    ISHIMATSU LAW GROUP, P.C.
                    Bruce L. Ishimatsu (CA SBN 86145)

18

                      bruce@ishimatsulaw.com
                    4712 Admiralty Way, No. 1012

19

                    Marina del Rey, CA 90292
                    Telephone: 310.200.4060

20

                    Fax: 310.496.1540

21

                    *Attorneys for Petitioner*

22

                    *Japan Display Inc.*

23

24

25

26

27

28